No. 15-3472

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) Appeal from the United States |
| | ) District Court for the |
| **Plaintiff-Appellee,** | ) Northern District of Illinois, |
| | ) Eastern Division |
| v. | ) |
| | ) No. 03-CV-3904 |
| **KEVIN TRUDEAU,** | ) Robert W. Gettleman, Judge |
| | ) |
| **Defendant.** | ) |

### SUPPLEMENTAL MEMORANDUM OF
### OBJECTORS-APPELLANTS HOGAN MARREN BABBO &
### ROSE, LTD. AND FARUKI IRELAND & COX, P.L.L.

Objector-Appellants, Hogan Marren Babbo & Rose, Ltd. ("Hogan Marren") and Faruki Ireland & Cox, P.L.L. ("Faruki") (collectively, the "Law Firms"), pursuant to this Court's Order of September 14, 2016, hereby submit the following Supplemental Memorandum.

## BACKGROUND

At oral argument on September 14, 2016, this Court inquired of the parties as to whether any monies remained in the receivership estate created by the July 26, 2013 district court order (Dkt. 729) after the district court's October 7, 2015 order overruling the Objector-Appellants' objections. (Dkt. 925). The Court ordered the parties to file supplemental memoranda explaining whether there are any monies left in the fund, and if not, whether the district court order resolving the

fund is the one under appeal or whether that order is a later one entered by the district court. (App. Dkt. #49). In addition, the court invited the parties to address *Luis v. United States*, 136 S. Ct. 1083 (2016), and 28 U.S.C. § 1292(a)(2), if appropriate. (Id.*)*

## THE ACCUMULATION AND DISPOSITION OF THE PROCEEDS OF THE RECEIVERSHIP ESTATE

On July 26, 2013, the district court found (1) Defendant Kevin Trudeau in contempt of the district court's June 2, 2010 order directing him to pay $37.6 million as a remedy for his previous contempt of the district court's orders (Dkt. 372), (2) directed the FTC to submit the name and qualifications of a Receiver for all of Trudeau's assets, including all entities, foreign and domestic, owned or controlled by Trudeau[1], and (3) ordered Trudeau to execute documents transferring ownership, control and direction of these entities to the Receiver and to transfer all bank accounts, brokerage accounts, securities and other assets of these entities to the Receiver. (Dkt. 729).

Nearly two years later, on July 9, 2015, the FTC moved for approval of a partial victim redress plan for the consumers whose loss was the basis for the district court's June 2, 2010 contempt sanction. (Dkt. 891). On July 15, 2016, the Receiver moved for entry of an order authorizing the Receiver to distribute the net proceeds of the receivership estate to the FTC and to provide notice to all of the

---

[1] For the purposes of this Supplemental Memorandum, Objector-Appellants will refer to the 29 entities covered under the Receivership Order as the "Trudeau Entities" of which their client, Website Solutions USA, was one of the entities created after the entry of the June 2, 2010 contempt order and operated by individuals later found by the district court to be controlled by Defendant Trudeau.

creditors of the Trudeau Entities placed in receivership and other interested parties. (Dkt. 898).

In moving to distribute the net proceeds to the FTC, the Receiver advised the district court that it had "marshalled and liquidated substantially all of the receivership estate" and estimated there would be "nearly $8 million in net proceeds to distribute." (Dkt. 898). As of March 31, 2016, the Receiver had collected total proceeds, before operating and receivership expenses, of $12.9 million and described the sources of those funds as follows:

  a. <u>Financial Accounts.</u> The Receiver collected funds totaling $4.4 million, including $2.3 million from the accounts of GIN, GIN Foundation, the GINFDN Event Account and Website Solutions.

  b. <u>Sale of Assets.</u> The Receiver generated proceeds from the sale of various assets totaling $641,870.

  c. <u>Income From Operations</u>. In operating the Trudeau Entities, including Website Solutions, the Receiver collected receipts totaling $7.8 million, which included GIN membership dues, copyright royalties, credit card sales and sale of inventory.

(Id., pp 3-4).

As reported to the district court, against this $12.9 million in receivership proceeds, the Receiver incurred total expenses of $6.5 million, including $5.1 million in expenses for operating GIN and other Trudeau Entities, and $1.35 million in receivership fees and expenses, including legal fees. (Dkt. 898, pp. 4-5). Added to these proceeds of approximately $6.3 million, the Receiver sought to also distribute to the FTC an additional $2 million that Trudeau had previously placed in escrow (Dkt. 894), which accounted for net proceeds in excess of $8 million.

Since the $8 million in net proceeds was grossly insufficient to pay in full the $37.6 million contempt sanction, in lieu of a formal claim procedure, the Receiver obtained authority from the district court to provide notice to all interested parties and creditors of the Trudeau Entities of the Receiver's intention to turn over all net receivership proceeds to the FTC. Once the objection period expired, and any objections resolved, the Receiver anticipated filing a final accounting with the court, confirming its authority to turnover any remaining proceeds and to close the receivership. (Dkt. 898, p. 6).

On October 7, 2015, the district court granted the FTC's Motion for Approval of Partial Victim Redress Plan and overruled all objections to the Receiver's motion to distribute the net proceeds to the FTC, including the objection of Objector-Appellants. (Dkt. 919). On October 30, 2015, the Receiver moved for the approval of an interim distribution of $4 million to the FTC (Dkt. 919), which was approved by the district court on November 4, 2015. (Dkt. 925). On December 21, 2015, the Receiver filed a motion for an order (a) approving a final accounting, (b) authorizing final distribution to the FTC, (c) assigning future royalty payments to the FTC, and (d) discharging the Receiver. (Dkt. 936).

On February 23, 2016, the district court granted the Receiver's motion and entered an order: (1) accepting and approving the Receiver's final accounting; (2) approving all of the actions and activities of the Receiver; (3) authorizing the Receiver to pay the FTC all remaining funds in the receivership estate; (4) ordering all royalties owed or collected to be paid directly to the FTC; and (5) discharging the

Receiver and all of its agents and employees of all duties, liabilities and responsibilities, effective upon the windup of the receivership estate. (Dkt. 950).

## DISCUSSION

### A. Introduction

This Court's September 14, 2016 order directed the parties to do several things. First, explain whether there are any monies in the receivership estate. Second, explain whether the district court's order resolving the funds is the one under appeal or whether that order is a later one entered by the district court. Third, explain whether 28 U.S.C. § 1292(a)(2) is applicable to the instant case. And finally, to address whether the Supreme Court's decision in *Luis v. United States*, may be applicable to the district court's consideration of the objections raised by two creditors of the receivership estate, which may have included proceeds that were untainted by the underlying consumer fraud.

### B. The District Court's October 7, 2015 Order

The order appealed from resolved all of the objections raised by creditors of the receivership estate and Defendant Trudeau and also granted the FTC's motion to approve a partial victim redress plan, over a separate opposition by Defendant Trudeau. (Dkt. 925). As the FTC has noted in this appeal, the October 7, 2015 order on review in this case resolved all the issues raised by the FTC's motion to approve the redress plan. (FTC Br., p. 4). The FTC takes the position, to which Objector-Appellants concur, that the October 7, 2015 order was final, even though on February 23, 2016, the court approved the Receiver's final accounting, authorized

final distribution of the remaining funds and closed the Receivership without payment of any of the outstanding pre-receivership claims. (*Id.*) The FTC relied on two decisions of this Court arriving at this conclusion, *Solis v. Current Development Corp.*, 557 F.3d 772 (7th Cir. 2009) and *United States v. Antiques Ltd. Partnership*, 760 F.3d 668 (7th Cir. 2014).

In *Solis*, this Court noted that it treats each post-judgment proceeding like a freestanding lawsuit so that "an order that addresses all of the issues raised in the motion that sparked the post-judgment proceeding is treated as final for purposes of section 1291." 557 F.3d at 776, *citing JMS Dev. Co. v. Bulk Petroleum Corp.*, 337 F.2d 822, 825 (7th Cir. 2003). The *Solis* court determined that the proceedings by the U.S. Department of Labor to remove a trustee of certain employee benefit plans and redistribute the trustee's ill-gotten gains was not final until the Court determined the amount of money each former participant of the plans would receive. (*Id.*) Here, based on the October 7, 2015 order, the district court determined that the FTC should receive all of the net proceeds, over the objection of the creditors and Trudeau.

In *Antiques Ltd. Partnership*, an action to enforce tax assessments against the principal defendants, tax liens against their property and liens against property of the partnership, the district court upheld the assessments and liens and considered a motion by the government to appoint a receiver to manage the partnership and sell the assets. The Court found that it had jurisdiction over an appeal from the appointment of the receiver under 28 U.S.C. § 1292(a)(2), as an

interlocutory order, and that a "judgment concluding the collection proceeding would likewise be an appealable final judgment." 760 F.3d at 671. Objector-Appellants submit that the October 7, 2015 order concluded the collection proceedings and effectively resolved all objections to the Receiver's motion to distribute the net proceeds to the FTC. All of the subsequent orders merely relate to disbursing those net proceeds to the FTC and discharging the Receiver.

### C. Applicability of 28 U.S.C. § 1292(a)(2)

At oral argument, the Court also questioned whether the district court's order could be an interlocutory decision arising in a receivership, appealable under 28 U.S.C. § 1292(a)(2), which provides:

> (a)   Except as provided in subsections (c) and (d) of this section, the court of appeals should have jurisdiction of appeals from:
>
> (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property

Clearly, this is not an order appointing a receiver, which was done in this case in August, 2013, or an order refusing to wind up the receivership. Nor can the October 7, 2015 order be construed as an interlocutory order refusing to take steps to accomplish the purpose of the receivership. On October 7, 2016, there was no more property to sell or dispose of or any more collection actions to pursue. In addition to overruling all of the objections to the Receiver's plan to distribute the net proceeds of the receivership to the FTC, the October 7, 2015 order approved the FTC's plan for partial victim redress, which was the purpose for creating the receivership in the first place. As the court held in *S.E.C. v. American Principals,*

*Holdings, Inc.,* 817 F.2d 1349, 1351 (9th Cir. 1987), Section 1292(a)(2) should be interpreted narrowly to apply to only those orders refusing to wind up the receivership or refusing to take actions to accomplish the purposes of the receivership. The district court's order was not an order refusing to wind up the receivership or refusing to take steps to accomplish the purpose of the receivership.

### D. Applicability of Luis v. United States

In *Luis v. United States*, the question presented was "whether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal office) needed to retain counsel of choice violates the Fifth and Sixth Amendments." 136 S. Ct. at 1088. In the plurality opinion of Justice Breyer, four members of the Court concluded that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." (*Id.*) Justice Thomas, who concurred in the judgment, rejected the plurality balancing approach and found instead that the Sixth Amendment and the common law limitation on pretrial restraints to tainted assets compelled vacation of the order. 136 S. Ct. at 1102.

*Luis* was a criminal case involving pretrial seizure of a defendant's "property of equivalent value" in an alleged $45 million federal health care fraud pursuant to 18 U.S.C. § 1345(a)(2). The plurality noted that the financial consequences of such frauds, including forfeiture and restitution, "are steep", citing, among other examples the decision of this court in *FTC v. Trudeau,* 602 F.3d 947, 949 (7th Cir. 2011). 136 S. Ct. at 1094-95. In *Luis*, the Court was weighing a criminal defendant's

fundamental right to counsel of choice "with the Government's contingent interest in securing its punishment of choice (namely, criminal forfeiture) as well as the victims' interest in securing restitution (notably, from funds belonging to the defendant, not the victims.)" 136 S. Ct. at 1093.

　　　Here, the FTC undertook these contempt proceedings to compel Mr. Trudeau's compliance with the earlier sanction and to divest Trudeau of any assets accumulated before or after the June 2, 2010 sanction order that he controlled. Thus, the purpose of the contempt proceedings was to obtain restitution for victims of the prior fraud from funds belonging to Trudeau, or from entities the FTC believed Trudeau currently controlled, not necessarily proceeds of the fraud or funds traceable to the proceeds of the fraud. What is clear from the Receiver's reports to the district court is that most of the $12.9 million in assets recovered came from the accounts of entities either created after the contempt sanction was entered or from the operation of those entities by the Receiver. As previously noted, $2.3 million was collected by the Receiver from the accounts of four Trudeau Entities – GIN, GIN Foundation, GINFDN Event Account and Website Solutions – which were formed after the June 2, 2010 contempt order. An additional $7.8 million in receivership proceeds was receipts from the operation of these and other Trudeau Entities after August, 2013. The proceeds then were mostly monies substantially removed from the prior fraud scheme, in other words untainted, but seized to make partial restitution to the victims of the prior fraud.

In their objection to the Receiver's plan to distribute all of the net receivership proceeds to the FTC as partial restitution of the victims of Trudeau's underlying fraud scheme, the Law Firms sought their reasonable fees and expenses relating to the document production sought by the FTC during the contempt proceedings. These were clearly identifiable costs and fees that Website Solutions, only later determined to be controlled by Trudeau, incurred in order to obtain and review the more than 242,000 electronic documents identified by broad search terms insisted on by the FTC. Website Solutions, through Hogan Marren, employed a forensic computer consultant and incurred expenses of over $36,000 to collect, segregate and produce the electronic records in a reviewable format, of which $22,053.70 remained unpaid at the time the receivership was imposed. (Dkt. 912, p. 5). Attorneys for Hogan Marren spent over 200 hours between April 5, 2013 and May 16, 2013 preparing the requested electronic and paper documents and reviewing them for relevance and privilege, which resulted in Website Solutions incurring attorney's fees of over $85,000 which remained unpaid at the time the receivership was imposed. (Dkt. 912, Ex. 1, pp. 7-15). Faruki Ireland also expended substantial time and expense to review these documents for privilege and to comply with the other third-party discovery, as reflected in their invoices to Website Solutions, of which $47,908.32 remained unpaid at the time the receivership was imposed. (Dkt. 912, p. 5, Ex. 2, Tab A).

In overruling the Law Firms' objections, rather than weighing the relative interests of the victims of Trudeau's fraud in these untainted funds against two of

the creditors of one of the receivership entities who performed services required by the FTC in these contempt proceedings, the district court summarily dismissed their claims for lack of standing, misconstrued their objections as an attempt to obtain payment for fees incurred in opposing the document production and suggested that any claim for fees and expenses should have been made earlier, before the Receiver had begun to marshal all the available assets controlled by Trudeau. (Br. p. 13, A-2-A-9).

Obviously, the Objector-Appellants' interests here are not of the same as a criminal defendant's right to untainted funds to pay for counsel of his or her choice. But in other FTC proceedings, this court has recognized that while FTC defendants subjected to a pre-judgment asset freeze do not have a legal entitlement to payment of attorney's fees, courts have routinely made allowances to permit some of the frozen assets  - -  which may in fact be proceeds of the alleged fraud - -  to be used to pay the lawyers defending against the FTC's suit. *See, e.g., FTC v. Think Achievement Corp.* 312 F. 3d 259, 262 (7th Cir. 2002); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 570, 575-76 (7th Cir. 1989). Including such fee provisions in these pre-judgment asset freeze orders is deemed to be within the court's equitable discretion. *Think Achievement,*  312 F. 3d at 262.

Applying the Court's reasoning in *Luis* to the instant situation, most of the remaining $8 million in proceeds in the receivership would be considered "untainted." The fees and costs of complying with the FTC production in this case was part of the costs of doing business for Website Solution, which, pre-receivership,

was paying the Law Firms in the regular course of business. Here, the district court did not weigh the extent to which these fees and costs should be satisfied, in the same way other pre and post-receivership expenses of the Trudeau Entities were paid out of the total $12.9 million in untainted receivership proceeds collected, before distributing the remaining funds to the victims of the prior fraud scheme.

## CONCLUSION

Based on the forgoing submission, Objector-Appellants submit this Court has jurisdiction to hear this appeal and, for the foregoing reasons and those grounds previously stated, respectfully urge this Court to reverse the district court's decision of October 7, 2015 and remand this matter to the district court for further proceedings.

                                Respectfully submitted,

                                HOGAN MARREN BABBO & ROSE, LTD. AND FARUKI IRELAND, P.L.L.

                                By:   s/ Patrick E. Deady
                                         One of Their Attorneys

Patrick E. Deady
Hogan Marren Babbo & Rose, Ltd.
321 N. Clark Street, Suite 1301
Chicago, Illinois 60654
(312) 946-1800
(312) 946-9818 facsimile

Dated: September 28, 2016

# **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served a true and correct copy of the foregoing **Supplemental Memorandum of Objectors-Appellants Hogan Marren Babbo & Rose, Ltd. and Faruki Ireland, P.L.L.,** via the CM/ECF filing system which will send notice to all counsel of record.

                                             s/Patrick E. Deady
                                         Attorney for Objector-Appellants

Dated: September 28, 2016